## JENKINS *v.* NEFF.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 198.   Argued March 20, 1902.—Decided June 2, 1902.

Section 55 of the Laws of 1893, ch. 196, simply places trust companies on
   an equality with banks, whether corporate or individual, in respect to
   the matter of interest, and does not give to trust companies power to
   loan, discount or purchase paper.
It is well settled that the findings of fact in a state court, are conclusive
   on this court in a writ of error.
In the record in this case there is no evidence of such a discrimination.

THIS case is before us on a writ of error to the Supreme
Court of the State of New York, and is brought to review a
final order of that court affirming an assessment of the shares
of stock in the First National Bank of Brooklyn. Under the
practice prevailing in that State a writ of certiorari was issued

out of the Supreme Court on August 13, 1897, on the petition of the stockholders of the First National Bank of the city of Brooklyn, now plaintiffs in error, directed to the board of assessors of the city of Brooklyn, requiring them to return all their proceedings relative to the assessment of the shares of stock of said bank. A return having been made the assessment was on October 6, 1899, confirmed, with some modifications not material to the present controversy. This order was affirmed by the Appellate Division of that court on January 9, 1900. 47 N. Y. App. Div. Sup. Ct. Rep. 394. On appeal to the Court of Appeals the order was by that court also affirmed, 163 N. Y. 320, and the record remitted to the Supreme Court.

*Mr. Seymour D. Thompson* and *Mr. Frank Harvey Field* for plaintiffs in error.

*Mr. James McKenna* for defendants in error.

Mr. Justice Brewer delivered the opinion of the court.

The right of the State to tax these shares of stock is not denied, but the contention of plaintiffs in error rests on the applicability of that part of section 5219, Revised Statutes, which reads "that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State." The purpose of this legislation was thus stated in *Mercantile Bank* v. *New York*, 121 U. S. 138, 155:

"A tax upon the money of individuals, invested in the form of shares of stock in national banks, would diminish their value as an investment and drive the capital so invested from this employment, if at the same time similar investments and similar employments under the authority of state laws were exempt from an equal burden. The main purpose, therefore, of Congress in fixing limits to state taxation on investments in the shares of national banks, was to render it impossible for the State, in levying such a tax, to create and foster an unequal and unfriendly competition by favoring institutions or

individuals carrying on a similar business and operations and investments of a like character. The language of the act of Congress is to be read in the light of this policy."

The laws of New York in reference to taxation of the shares of stock in national banks are like those in respect to the taxation of shares of stock in state banks, and there are many of the latter in the State. So it is not suggested that the State makes any discrimination between state banks and national banks, but it is contended that the statutes of New York, in reference to the taxation of trust companies, are essentially different; that these trust companies are practically carrying on a banking business; that an enormous amount of moneyed capital is invested in them, and that as a result not merely a theoretical but a practical and burdensome discrimination is made against the moneyed capital invested in national banks. Commenting upon this, it was said by Mr. Justice Woodward, delivering the opinion of the Appellate Division of the Supreme Court in the case at bar:

"It is conceded on the part of the relators that the stock of the First National Bank was assessed upon the same principle applied in the assessment of the stock of the state banks doing business in their immediate vicinity, and that this was done under the provisions of section 24 of the tax law of 1896. In order to pronounce this provision of the law invalid we must, therefore, convict the legislature not alone of hostility to the national banks, but of hostility toward its own creations; we must reach the conclusion that the State of New York is seeking, by an exercise of its taxing power, to advance one class of moneyed corporations at the expense of another, both of which have been created by the legislature and both of which are engaged, presumptively, in promoting the interests of the people. There are no presumptions in favor of this idea, and there is no evidence in the case to show that any of the state institutions have ever complained of an inequality in taxation."

Further, in *Mercantile Bank* v. *New York, supra,* decided in 1887, the New York statutes in reference to the taxation of shares of stock of national banks were challenged on the ground of discrimination in favor of moneyed capital otherwise invested,

and several instances of such investment were called to the attention of the court, among them that of trust companies, and it received, as stated in the opinion, " separate consideration." It was held that the system of taxation prevailing in respect to them was not such as to vitiate the statutory methods of taxation of the shares of stock in national banks. It must be borne in mind that for a score of years prior to that decision there had been a series of cases coming to this court from different States, principally from New York, involving statutes with reference to state taxation of national banks, and that during these years changes had been going on in the legislation of the different States in order to conform to the rules laid down by this court in its successive opinions.

Counsel for plaintiffs in error insist that that case is not controlling, and for several reasons : One, because two amendments have been made in the legislation of New York, which it is said give full banking powers to trust companies, save in respect to the power of issuing circulating notes. The first is found in chap. 696, Laws of 1893, which added an eleventh subdivision to section 156 of the banking law (chap. 689, Laws 1892), and which in terms authorizes trust companies : " 11. To exercise the powers conferred on individual banks and bankers by section 55 of this act, subject to the restrictions contained in said section."

Section 55, referred to, provides :

" Every bank and individual banker doing business in this State may take, receive, reserve and charge on every loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest at the rate of six per cent per annum; and such interest may be taken in advance, reckoning the days for which the note, bill or evidence of debt has run." 2 Stats. 1892, 1869, c. 689.

This legislation simply places trust companies on an equality with banks, whether corporate or individual, in respect to the matter of interest, and does not give to trust companies power to loan, discount or purchase paper. Whatever powers trust companies had in respect to these matters were given by statutes which were in existence before the decision in *Mercantile*

*Bank* v. *New York.* That which was in the mind of the legislature was evidently equality in respect to interest and usury. The doctrine that legislative recognition is equivalent to legislative grant is not pertinent. In order to come within the scope of that doctrine there should be in the language a clear recognition of a corporate entity or corporate power actually existing or claimed to exist. A grant of corporate life or corporate power is not made by implication, and the same rule obtains in respect to the matter of recognition. If the language of the legislature is satisfied, has full scope and effect, without reading into it either a grant or a recognition of corporate life or power, neither will be implied. And here so clear is it that the legislature was not contemplating the grant or recognition of any hitherto unauthorized power to loan, discount or purchase paper, but had simply the thought of giving equality in the matter of interest and usury, that it is inadmissible to hold that thereby an additional power, either of loan or discount or purchase, was given to trust companies.

The other change in the legislation referred to is found in section 163 of chapter 689 of the Laws of 1892, which provides that "every trust company incorporated by a special law shall possess the powers of trust companies incorporated under this chapter, and shall be subject to such provisions of this chapter as are not inconsistent with the special laws relating to such specially chartered company." But this gives no new powers to trust companies generally, but simply grants to such companies, incorporated under special laws, the powers of trust companies incorporated under the general statute, and subjects them to the same restrictions, unless inconsistent with their special charters. Clearly, there has been no change in the legislation of New York in respect to the powers of trust companies which calls for any limitation of the decision in *Mercantile Bank* v. *New York.*

Again, it is insisted that that case was submitted on an agreed statement of facts which neglected to disclose fully the manner in which trust companies carried on their business, and also that whatever might have been the facts at that time the testimony here presented shows that almost the entire volume of

the business of the trust companies is banking, pure and simple, and but a small fraction of it is the peculiar and ordinary business of trust companies; but that decision rested mainly upon the powers granted by the statutes of New York to trust companies, and it was held that, tested by such powers, they were not in any proper sense of the term banking institutions.

Further, although there is in the record quite an amount of testimony as to the assets and business of trust companies in Brooklyn, yet the case was determined by the Supreme and Appellate Courts of New York upon findings of fact—which findings do not sustain the contention of plaintiffs in error in this respect—and it is well settled that the findings of fact in the state courts are on a writ of error conclusive with us. *Hedrick* v. *Atchison, Topeka &c. Railroad*, 167 U. S. 673, 677, and cases cited therein; *Bement* v. *National Harrow Co., ante,* 70. In other words, we apply the law to the facts settled in the state courts, and we do not search the record to see if there be not disclosed by the testimony some other matters not embraced in the findings which may affect the conclusion.

Still, again, even if we were to pass beyond the findings of fact and, searching the record, should be of the opinion that the testimony justified the contention of the plaintiffs in error that trust companies are mainly using their funds in the carrying on of a purely banking business—and this under an assumption of powers not in fact bestowed by the legislation of the State—what effect would such conclusion have upon the question before us? It is to be presumed that if trust or other companies are exercising powers not conferred by law the State will take the proper steps to keep them within their statutory limits, and a neglect for a limited time to do so cannot be considered as an assent by the State to such an improper assumption of power. It is not to be assumed that the State is acting in bad faith; that it has so legislated that upon the face of the statutes a uniform rate of taxation upon all moneyed capital is provided, while at the same time it has designedly placed the grants of some corporate franchises in such form as to permit the use of moneyed capital in certain ways with peculiar and less stringent rates of taxation. Certainly there is nothing in this case to

indicate any want of good faith on the part of the State of New York. Whatever may have been the practices of trust companies, however much they may in fact have used their funds in a strictly banking business, there is no suspicion of a purpose on the part of the State to discriminate against national banks by permitting trust companies to do a banking business without being subject to the same rate of taxation that is enforced against moneyed capital invested in such banks. Counsel for plaintiffs in error notice several reports of the commissioners of taxes and assessments of the city of New York for years following the commencement of this suit in respect to the relative taxation of banks and trust companies, and it was stated on the argument that, as a consequence perhaps of these reports, legislation has been had with a view of correcting any supposed discrimination.

In reference to some other suggested differences between banks and trust companies in respect to the matter of taxation we make a further extract from the opinion of Mr. Justice Woodward, which in general we approve (p. 402):

"It may not, in view of the importance of this question, be out of place to suggest that the statute under which the trust companies are organized does not compel the capital to be invested in United States bonds; it may be invested in 'bonds and mortgages on unincumbered real property in this State worth at least double the amount loaned thereon, or in the stocks or bonds of this State, or of the United States, or of any county or incorporated city of this State duly authorized by law to be issued.' The Banking Law, Laws of 1892, chap. 689, sec. 159. If the capital of the trust companies should be invested in bonds and mortgages or other securities not exempt from taxation, there would be no inequality in the premises; and as they are not allowed the privilege of issuing notes to be circulated as money upon the security of their United States bonds, which is the real justification for the taxation which is assessed upon the shareholders of the national banks, we fail to find in the record any evidence of such a discrimination against the national banks as would justify us in holding that the law under which the trust companies operate, and the

statutes under which they are taxed, can have the effect of invalidating an otherwise valid statute. The fact that in a given instance, by reason of an exercise of a discretion as to the particular kind of securities purchased, a trust company may have a real or imaginary advantage over investors in the shares of a national bank is not a sufficient foundation for declaring an assessment invalid. It is essential, if the law of the State is to be declared invalid under the limitations expressed in the United States statute, that the enactment of the legislature shall evidence a disposition to evade or override the spirit of the limiting statute; and this is clearly not the case where it provides for equal taxation upon its own state banks, and where it does not require its trust companies, which, it may be conceded, come into a limited competition with the investors in the shares of national banks, to invest their capital in such a way as to necessarily exempt them from taxation upon a portion of their capital stock. If the State refused to allow its trust companies to invest in United States securities there might be a far greater cause for grievance. Trust companies are not organized primarily for banking purposes; they are designed for other purposes, as pointed out in the *Mercantile Bank* case, and it was never the purpose of the Federal government to interfere with the policy of the State in reference to the formation and development of such corporations as it should judge expedient, even though it should be found necessary to invest them with some of the powers of banking associations as an inducement to perform the other duties and obligations imposed by the State. As was said in the *Mercantile Bank* case in reference to savings banks, 'however large, therefore, may be the amount of moneyed capital in the hands of individuals, in the shape of deposits in savings banks as now organized, which the policy of the State exempts from taxation for its own purposes, that exemption cannot affect the rule for the taxation of shares in national banks, provided they are taxed at a rate not greater than other moneyed capital in the hands of individual citizens otherwise subject to taxation.'"

While we have not discussed all the questions raised by counsel in their elaborate brief and argument, we have sufficiently

indicated our views upon the general questions involved in the case, and, finding no error, the judgment of the Supreme Court of the State of New York is

*Affirmed.*

Mr. Justice Gray did not hear the argument and took no part in the decision of this case.