PALMER et al. v. HICKORY GROVE CEMETERY et al.

(Supreme Court, Appellate Division, Second Department.  June 12, 1903.)

1. CEMETERY ASSOCIATIONS—CHARTERS—STRICT CONSTRUCTION—POWERS NOT EXPRESSLY GRANTED.

Grants of power to cemetery associations, which are forbidden by section 10 of the corporation law (Heydecker's Gen. Laws, p. 2854, c. 35) to "possess or exercise any corporate powers not given by law, or not necessary to the exercise of the powers given," should be strictly construed, so as to prevent rights from being taken from the public or given to the corporation beyond those which the words of the grant, as ordinarily construed, convey.

2. SAME—REGULATION—POLICE POWER.

Cemeteries are within the proper scope of the police power of the state.

3. SAME—ULTRA VIRES ACTS—INJURY TO PRIVATE PERSON—REMEDY BY INJUNCTION.

A private person who is specially injured, or threatened with special injury, by reason of the maintenance of a cemetery, has a right to question the legality of the steps taken by the corporation in pursuance of the powers granted, and to have the aid of the courts in preventing unlawful acts prejudicial to his rights.

4. SAME—EVIDENCE OF VALIDITY—RECITAL IN NOTICE.

A recital, in a published notice of a purpose on the part of a cemetery association to acquire land, that it was done "by order of the board of directors," did not afford evidence that it was the act of the corporation as against the rights of third persons.

5. SAME—NEWSPAPER PUBLICATION—SUFFICIENCY—STATUTORY REQUIREMENTS.

By the provisions of section 42 of the membership corporation law (Heydecker's Gen. Laws, p. 3662, c. 43), cemetery associations are prohibited from taking or acquiring land for cemetery purposes in certain counties unless the consent of the board of supervisors be first obtained, and it is further provided that notice of application to this board for such consent shall be published once a week for six weeks in two newspapers of the county having the largest circulation therein.  Held, that a notice of application for consent first published but 38 days before the date set for a hearing, and not published in the newspapers having the largest circulation in the county, did not confer jurisdiction on the board of supervisors to grant their consent, and such consent, when granted, conferred no rights on the association.

6. SAME—ACQUISITION OF LAND—LEGISLATIVE REGULATION—VALIDITY.

Laws 1902, p. 297, c. 73, making it unlawful for any rural cemetery association to take or acquire land in counties of a certain population when there had already been set apart for cemetery purposes in such counties 500 or more acres of land, and forbidding the board of supervisors to grant their consent to a further acquisition of cemetery property in such counties, was a valid exercise of legislative power under the power reserved in Const. art. 8, § 1, to alter or repeal general laws or special acts relative to corporations.

7. STATUTORY CONSTRUCTION LAW—APPLICATION.

Section 31 of the statutory construction law (Laws 1892, p. 1491, c. 677), providing that·the repeal of a statute shall not affect any act done or right accruing or acquired prior to the time such repeal takes effect, does not apply to Laws 1902, p. 297, c. 73, relative to the acquisition of land by rural cemetery associations in certain counties, expressly repealing all acts or parts of acts inconsistent therewith, and providing its own saving clause, since, by the terms of the statutory construction law, it is not applicable to statutes when their general object, the context of the language construed, or other provisions of law indicate a different meaning and intention from that required to be given by the construction law.

Hirschberg and Hooker, JJ., dissent.

Appeal from Special Term, Westchester County.

Action by Lizzie M. Palmer and others against Hickory Grove Cemetery and another. From a judgment dismissing the complaint, plaintiffs appeal. Reversed.

Argued before BARTLETT, JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

J. Addison Young (Charles H. Young, on the brief), for appellants. Charles A. Wendell, for respondent the Hickory Grove Cemetery.

WOODWARD, J. The plaintiffs bring this action to restrain the defendant Hickory Grove Cemetery from acquiring certain lands in the town of Mamaroneck, Westchester county, for cemetery purposes, and from establishing a cemetery thereon. The claim of the plaintiffs is that, owing to the character of the soil and the juxtaposition of running streams, the seepage of the proposed cemetery would be carried down through the soil and find its way into their wells, thus menacing the life and health of the community, and especially that of these plaintiffs, whose property is near the proposed cemetery. It is also urged, and the evidence upon this point does not appear to be disputed, that by reason of the establishing and maintaining of the proposed cemetery the property of these plaintiffs would be depreciated, and that they would have no adequate remedy at law for the damages which they would thus be called upon to sustain.

While the evidence in support of the first proposition may not be conclusive, we are of opinion that in view of the importance of preserving the public health, and the conceded menace which the interment of the dead in the vicinity of water-supply sources entails, a court of equity may very properly take jurisdiction in this case, and that the plaintiffs are entitled to the relief demanded, unless the defendants have complied with all of the provisions of law necessary to the right which they are seeking to exercise. The defendant cemetery is a domestic corporation, and it is forbidden by section 10 of the general corporation law, Heydecker's Gen. Laws, p. 2854, c. 35, to "possess or exercise any corporate powers not given by law, or not necessary to the exercise of the powers so given." The rule is now well settled that grants of this character are to be construed strictly, so as to prevent rights from being taken from the public, or given to a corporation, beyond those which the words of the grant, by their ordinary . construction, convey. Skaneateles W. P.

Co. v. Village of Skaneateles, 161 N. Y. 154, 163, 55 N. E. 1100.   The right of this corporation to maintain a cemetery at all depends upon the terms of the acts under which it is created.   Cemeteries are universally regarded as within the proper scope of the police power of the state, and the restrictions which are imposed upon these corporations indicate clearly that the Legislature contemplated that they were in a measure, at least, a menace to the health and the property rights of the community.   This being true, it follows naturally that any one who is specially injured, or who is threatened with special injury, by reason of the maintenance of a cemetery, has a right to question the legality of the steps taken by the corporation in pursuance of the powers granted, and to have the aid of the court in preventing any unlawful acts by which his rights may be prejudiced.   In Livingston v. Livingston, 6 Johns. Ch. 497, 10 Am. Dec. 353, Chancellor Kent held that injunctions will be granted to prevent trespass, as well as to stay waste, where the mischief will be irreparable, and to prevent a multiplicity of suits; and this doctrine was approved in Spear v. Cutter, 5 Barb. 486, the latter authority being cited in Flood v. Van Wormer, 147 N. Y. 284, 289, 41 N. E. 569.

The evidence in this case, it seems to us, is sufficient to show that the property rights of the plaintiffs will be trespassed upon by maintaining the proposed cemetery.   If the evidence falls short of establishing a nuisance created by the percolation of germ-charged seepage into the wells and streams upon the premises of the plaintiffs (and upon this point there is room for a fair disagreement), there is no dispute upon the proposition that to use the proposed lands for cemetery purposes would operate to depreciate the value of the property of the plaintiffs, and they would be without an adequate remedy at law for the damages which they would suffer by reason of the continued and increasing injury which must result from the filling up of the cemetery.   Under such circumstances the plaintiffs have a clear right to inquire whether the defendant cemetery has, by a compliance with the conditions of the statute, acquired the right in law to work this injury, and, if the statutory provisions giving the right have not been complied with, to restrain the trespass upon their rights.   Dry Dock, E. B. & B. R. R. Co. v. Mayor, 47 Hun, 221, 223; N. Y. C. & H. R. R. R. Co. v. City of Rochester, 127 N. Y. 591, 594, 28 N. E. 416, and authorities there cited; Flood v. Van Wormer, supra.

By the provisions of section 41 of the membership corporations law, Heydecker's Gen. Laws, p. 3661, c. 43, any seven or more persons are permitted to become a cemetery corporation by making, acknowledging, and filing in the proper offices a certificate specifying the county, town, city, or village in which the cemetery is to be located, the name of the proposed corporation, etc.   And on filing the same, in pursuance of law, the signers thereto, their associates and successors, become a corporation in accordance with the provisions of the certificate.   The next section—and it is one of the conditions under which the corporation is organized—provides that a cemetery corporation shall not take, by deed, devise, or otherwise, any land in either of the counties of Kings, Queens, Rockland, or Westchester for cemetery purposes, or set apart any ground for cemetery purposes

in either of such counties, unless the consent of the board of supervisors thereof be first obtained, which board may grant such consent upon such conditions, regulations and restrictions as in its judgment the public health or the public good may require. The defendant corporation took its charter under these restrictions, with the constitutional reservation to the Legislature of the power to alter or repeal the same (section 1, art. 8) and to regulate the powers of boards of supervisors (section 27, art. 3). The statute further provides that "notice of application to any such board for such consent shall be published once a week for six weeks in two newspapers of the county having the largest circulation therein, stating the time when the application will be made, a brief description of the lands proposed to be acquired, their location and the quality thereof." It seems clear to us that this statute contemplates that there shall be a corporation duly organized, and that this corporation, acting in the manner pointed out by section 39 of the general corporation law, Heydecker's Gen. Laws, p. 2866, c. 35, shall authorize and direct the publication of a notice "once a week for six weeks" before such application is to be made; that is, that there shall be six publications, one in each week, and that this notice shall be published for the full period of six weeks, or forty-two days, before such application is made, so that the public shall have at least six weeks' notice before the hearing provided for in section 42, Heydecker's Gen. Laws, p. 3662, c. 43. Bunce v. Reed, 16 Barb. 347, 350; People ex rel. Hetfield v. Trustees, 70 N. Y. 28, 32; Valentine v. McCue, 26 Hun, 456, 457. It is likewise provided that this notice shall be published in the two newspapers having the largest circulation in the county, and that which the Legislature has prescribed as a condition of exercising a power, courts cannot declare immaterial. Stebbins v. Kay, 123 N. Y. 31, 35, 25 N. E. 207. And "in recent times courts are less disposed than formerly to depart from or qualify the plain words of a statute in favor of what is termed an equitable construction, in order to take particular cases out of its operation upon some supposed view of policy not indicated in the act itself." Karst v. Gane, 136 N. Y. 316, 321, 32 N. E. 1073. The evidence shows conclusively that the certificate of incorporation was filed on the 22d day of November, 1901; that four days previous to that time four of the six persons who afterward became directors of the corporation directed their attorney to publish a notice of an application for the consent of the board of supervisors, and that this notice, signed, "Hickory Grove Cemetery, by order of the Board of Directors," was published in the Yonkers Herald and in the Eastern State Journal on November 22 and November 23, 1901, and in each of the five weeks thereafter a notice that on December 30, 1901, the defendant would make such application. It appears, therefore, that the entire time between the first publication and the time of making the application was only 38 days, and the evidence shows that this notice was not published in the Yonkers Statesman, which was shown to have a regular daily circulation of 3,100, without including an extra election issue, while the Eastern State Journal, in which the notice was published, had a circulation of 2,391 per week, including an election issue. The recital in the published notice that it was done

"by order of the Board of Directors" did not afford evidence that it was the act of the corporation, as against the rights of third persons. Miller v. City of Amsterdam, 149 N. Y. 288, 296, 297, 43 N. E. 632; Cagwin v. Town of Hancock, 84 N. Y. 532; O'Donoghue v. Boies, 159 N. Y. 87, 98, 99, 53 N. E. 537. The notice not having been published for the full period of six weeks before the date of the application, and not having been published twice in each week in the two newspapers having the largest circulation in the county, we reach the conclusion that the board of supervisors never had jurisdiction to grant the consent asked for by the defendant (Jewell v. Van Steenburgh, 58 N. Y. 85, 92), and that the latter never gained any rights under the action of the board of supervisors taken on the 30th day of December, 1901.

The defendant corporation seems to have reached this same conclusion, for on the 18th day of January, 1902, it began the publication of a second notice that it would ask for the consent to use the lands involved in this controversy for cemetery purposes. This notice named the 4th day of March, 1902, as the time for making the application. In the meantime the Legislature, in the exercise of its constitutional right to alter from time to time the corporate powers which it has granted (section 1, art. 8, State Constitution), had been at work, and on the 28th day of February enacted chapter 73, page 297, of the Laws of 1902, the act taking effect immediately, in which it was provided:

"It shall not be lawful for any rural cemetery corporation to hereafter acquire or take by deed, devise or otherwise, any land in any county within the state of New York, having a population of between one hundred and seventy-five thousand and two hundred thousand, according to the federal census of nineteen hundred, or set apart any ground for cemetery purposes therein, where there has already been set apart in any such county, five hundred acres of land for rural cemetery purposes, and the consent of the board of supervisors of any such county shall not be granted where there has already been granted five hundred acres of land, or upwards, within such county, to rural cemetery corporations."

It is conceded that there were over 900 acres of land dedicated to cemetery purposes in Westchester county at the time this last consent was asked for, but in spite of this statute the board of supervisors, on being relieved from an order of injunction, granted the consent, without a hearing, on the 31st day of March, 1902. If chapter 73, page 297, of the Laws of 1902, was a valid exercise of the legislative power, then it was unlawful for the defendant to take or set apart for cemetery purposes any lands in Westchester county, either with or without the consent of the board of supervisors. The action of the board of supervisors in granting a consent could not make that lawful which the Legislature had declared unlawful, and if the Legislature in the first instance had the power to make special conditions for Kings, Queens, Rockland, and Westchester counties, no reason suggests itself why, under the reserved power to alter or repeal the statute, the Legislature has not the power to determine that, when a given portion of the territory is dedicated to cemetery purposes, no further lands shall be set apart. It is true, of course, in respect to its rights of property, a corporation is a citizen of the state, and as such

is entitled to the protection of the constitutional provisions made
for that purpose; but where a corporation is created under a general
law, and has acquired no rights of property in compliance with its
provisions, it is not clear to us what provision of the Constitution is
violated by an amendment of the law which prohibits such corpora-
tion from taking property for a purpose which is concededly subject to
police regulation. The statute now under consideration enacted in
its second section that "nothing herein contained shall affect any
lawful consent or grant hitherto made by the board of supervisors
of any such county," so that, if the defendant corporation had any
rights of property under a lawful consent, it was fully protected.
It was further provided (section 3) that "all acts, or parts of acts,
inconsistent with this act, are hereby repealed," so that it cannot be
held that the defendant has any rights under the provisions of section
31 of the statutory construction law, Laws 1892, p. 1491, c. 677,
which is "applicable to every statute unless its general object, or the
context of the language construed, or other provisions of law indi-
cate that a different meaning or application was intended from that
required to be given by this chapter." Section 1, Stat. Const. Law,
Laws 1892, p. 1486, c. 677. Chapter 73 of the Laws of 1902 was
complete in itself; it provided its own saving clause; and the Legis-
lature had a right, before any property rights were lawfully secured,
to change the method of procedure (Lazarus v. M. E. R. Co., 145
N. Y. 581, 584, 585, 40 N. E. 240), or to take away the right to ac-
quire further property for cemetery purposes, where, in its judgment,
the public health or general welfare demanded such action. In Cam-
eron v. N. Y. & M. V. W. Co., 133 N. Y. 336, 340, 31 N. E. 104,
where the saving clause followed closely the provisions of section 31
of the statutory construction law, there were two water companies
having property rights in their respective plants. These companies
had taken steps looking to consolidation under the laws as they then
existed. Three days after the board of directors had agreed upon
the terms of consolidation, and had begun the publication of the no-
tices required for the calling of a meeting of the stockholders to
ratify such action, the laws permitting consolidation were repealed,
and the court very properly held that the saving clause permitted them
to consummate the proceedings and to perfect the consolidation.
This is quite a different case from the one at bar, where the defendant
corporation has acquired no lawful rights of property, and has simply
taken the steps to secure permission to do so, and the Legislature
steps in and denies to the board of supervisors the power to give the
consent, and makes the further acquiring of property for cemetery
purposes unlawful within a given locality. See People ex rel. Het-
field v. Trustees, 70 N. Y. 28, 33. Obviously, under the constitution-
ally reserved power, the Legislature might have absolutely repealed
the membership corporation law in so far as it related to rural ceme-
teries, or in full, and a corporation organized under its provisions,
but which had acquired no lawful rights in property, would have no
grounds for complaint; it accepts its charter subject to this risk, and
it cannot by informal or illegal acts acquire a vested right as against
third parties or the state. When the Legislature creates a corpora-

tion, it does not guaranty to it that it may transact the business for which it is created, except upon a compliance with the provisions of law in force at the time; and, if the corporation does not act until the law is repealed or amended, it is bound to conform to the law and to abide the constitutional will of the Legislature. It is clearly within the police power of the state to restrict the use of land in crowded and growing communities, where the water supply is endangered and the public health menaced, by determining the amount of land which may be used for cemetery purposes (People v. Havnor, 149 N. Y. 195, 199, 43 N. E. 541, 31 L. R. A. 689, 52 Am. St. Rep. 707), and we are clearly of opinion that in the enactment of chapter 73 of the Laws of 1902 the Legislature was within its constitutional limits, and that nothing is here presented to overcome the presumption of constitutionality.

As the defendant corporation has never acquired any legal right to set apart lands for a cemetery, and it appears that the property rights of the plaintiffs would be materially injured, while the evidence supports in some measure at least the conclusion that the cemetery would be a private nuisance, we are of opinion that the judgment appealed from should be reversed.

Judgment reversed, and new trial granted; costs to abide the final award of costs. All concur, except HIRSCHBERG and HOOKER, JJ., who dissent.