In the Matter of the Application of THE LINCOLN SAVINGS BANK OF BROOKLYN, Petitioner, for a Peremptory Order of Mandamus against JOSEPH A. BRODERICK, as Superintendent of Banks of the State of New York, Respondent.

Supreme Court, Kings County, June 1, 1931.

*Hutton & Holahan* [*George R. Holahan, Jr.,* of counsel, and *Frederick M. Weisbrod* on the brief], for the petitioner.

*John J. Bennett, Attorney-General* [*Robert E. Beyer, Assistant Attorney-General,* of counsel], for the respondent.

DRUHAN, J. The Church Lane Savings Bank was incorporated on September 1, 1925, and thereafter opened an office for the transaction of business at No. 3022 Church avenue. It continued to occupy this office until September 25, 1930, when it was merged into the Lincoln Savings Bank of Brooklyn. This is the only office ever maintained by the Church Lane Savings Bank. The Lincoln Savings Bank has now applied to the Superintendent of Banks for permission to change the location of this office to a point on Church avenue not more than 300 feet west of its present location, alleging that the premises occupied by the bank are entirely inadequate to transact the business which comes to this office and as a consequence the public is thus seriously inconvenienced. The Superintendent of Banks, however, has denied the application, stating: "The Superintendent of Banks cannot authorize a change of location of a branch, acquired by merger, as the Attorney-General has ruled that the Banking Law does not give him that power." I am of the opinion, however, that the Legislature has authorized the Superintendent of Banks to permit a change in the location of any place where the business of a bank was lawfully conducted. By subdivision 2 of section 245 of the Banking Law (as amd. by Laws of 1923, chap. 248), which is entitled, "Restrictions as to place of business: branch offices," a savings bank is prohibited from transacting its usual business at any place other than its principal place of business, except that it may, as therein provided, occupy and maintain as a branch office the place of business occupied and maintained at the time by the savings bank which became merged into it pursuant to article 12. The permission thus granted to maintain branch offices necessarily includes the right to carry on, in the branch offices resulting from authorized mergers, the usual business of the bank. The right to maintain such branch offices so created and the right to conduct business therein are inseparable. This provision was permitted to remain in the section when the amendatory legislation of 1923 added subdivision 3. This subdivision authorizes a savings bank to open one branch office as therein provided. It is clear that the single branch office here authorized is in addition to the branch offices referred to in subdivision 2 and which are the result of mergers. Neither this section nor any other section makes or recognizes any distinction between branch offices resulting from

mergers and a branch office created by a compliance with subdivision 3. The business conducted in either is as lawful as that transacted in any other branch office. Section 259 authorizes a savings bank to make application for leave to change its *place of business*. This section and section 245 are a part of the same article of the Banking Law. When section 259 of the Banking Law was enacted the Legislature knew that a savings bank might lawfully acquire by mergers branch offices and consequently several different places of business. Yet section 259 uses the singular and not the plural of the word *place*. It does not in terms authorize an application to change any of its *places* of business. But it is also true that the application authorized by the section is not in terms restricted to an application to change its principal place of business. The word *principal* does not appear in the section. In view of the legislative knowledge of the provisions of subdivision 2, which recognizes the existence of branch offices resulting from mergers, it follows that in enacting section 259 the Legislature intended to confer power upon the Superintendent of Banks to authorize a change in the location of any place where the business of the bank was conducted, including branch offices. In reaching this conclusion I have not overlooked the latter part of section 259 to the effect that upon compliance with certain requirements " thereafter its principal place of business shall be the location so specified." This language is a correct characterization of the result when the application is to change the principal place of business, but in my opinion it does not conclusively establish that only applications relating to the principal place of business are within the purview of the section. Undoubtedly the majority of applications relate to a change in the principal place of business, since the majority of savings banks throughout the State have only one place of business. However that may be, the title to the section, " Change of location," is alike pertinent to applications relating to places of business resulting from mergers and to applications relating to principal places of business. And the language of the first portion of the section, " for leave to change its place of business," is sufficiently broad to embrace any place where a savings bank lawfully conducts its business. Any inference to be drawn from the language quoted in the latter part of the section must yield to the paramount intention of the Legislature as evidenced by the whole section. The motion for a mandamus order requiring the defendant to receive and consider the application will be granted.