In the Matter of the Application of HUDSON-HARLEM VALLEY TITLE AND MORTGAGE COMPANY, Appellant, for a Mandamus Order against WILLIAM R. WHITE, Superintendent of Banks of the State of New York, Respondent, and TITLE GUARANTEE AND TRUST COMPANY, Impleaded Defendant, Respondent.*

Third Department, May 5, 1937.

* See 164 Misc. 47.

*James F. Donnelly* [*Ellis J. Staley* and *Walter J. McNichols* of counsel], for the appellant.

*James T. McDonald, Special Assistant Attorney-General,* for the respondent William R. White, Superintendent of Banks of the State of New York.

*Milbank, Tweed, Hope & Webb* and *Samuel E. Aronowitz* [*A. Donald MacKinnon, Samuel L. Rosenberry* and *Wilber Stammler* of counsel], for the respondent Title Guarantee and Trust Company.

HILL, P. J. The defendant-respondent, Title Guarantee and Trust Company, maintains a branch office at White Plains, Westchester county, N. Y. Its principal place of business is in the borough of Manhattan, New York city. The petitioner-appellant is a domestic corporation with its principal place of business at Mount Kisco, Westchester county, N. Y. It presented a petition at a Special Term of the Supreme Court held in the city of Albany, alleging therein that the Title Guarantee and Trust Company is transacting its usual business at a branch office in Westchester county in violation of the Banking Law (§ 195) and that the Superintendent of Banks has failed to discharge his clear legal duty to order this corporation, to which the Banking Law applies, to discontinue its unlawful acts. (§ 56.) The application made thereon for a peremptory order of mandamus directing the Superintendent of Banks to act, was denied and the petition dismissed. Petitioner appeals from that determination.

" No trust company or any officer or director thereof, shall transact its usual business at any place other than its principal

place of business, except as follows: [none of the exceptions apply to the White Plains branch of respondent]." (Banking Law, § 195.) The Banking Law (§ 56) provides: " Orders of Superintendent.   1. To discontinue unlawful or unsafe practices.   Whenever it shall appear to the Superintendent that any corporation to which this chapter is applicable   *   *   *   has violated its charter or any law, or is conducting its business in an unauthorized or unsafe manner, he may issue an order directing the discontinuance of such unauthorized or unsafe practices and requiring the delinquent to appear before him, at a time and placed fixed in said order, to present any explanation in defense of the practices directed in said order to be discontinued."   It is argued that " may " as used in section 56 is mandatory.   (*Supervisors* v. *United States*, 4 Wall. 435, and many later authorities.)   Had defendants failed to answer, petitioner on the facts alleged, under the statutes quoted, would have been entitled to a peremptory order of mandamus.

The petition is answered by the Superintendent of Banks and also by the corporate respondent through its secretary and assistant vice-president.   A considerable part of the trust company affidavit is devoted to an attack upon the good faith and even the business honesty of petitioner's officials.   These averments, together with answering statements in petitioner's reply, are without significance unless to show an extreme lack of cordiality between the officials of the two corporations.   These parties are competitors, and some action may be required by the Banking Department " to eliminate unsound and destructive competition among such corporations."   (Banking Law, § 10-a.)

Any person aggrieved may seek mandamus.   (*Matter of Heeran* v. *Scully*, 254 N. Y. 344.)   A person is aggrieved by the unlawful acts of a competitor.   (*Brooklyn City R. R. Co.* v. *Whalen*, 191 App. Div. 737; affd., 229 N. Y. 570; *Matter of Niagara, Lockport & O. P. Co.* v. *Prendergast*, 229 App. Div. 295.)   Mandamus may be invoked against the Superintendent of Banks.   (*Matter of Lincoln Savings Bank* v. *Broderick*, 140 Misc. 380.)   A peremptory mandamus order will be issued in the first instance only when petitioner shows a clear legal right as matter of law.   (*Matter of Whitman, No. 1*, 225 N. Y. 1, 8.)   On the application all allegations contained in the opposing affidavits are assumed to be true.   (*People ex rel. Corrigan* v. *Mayor*, 149 N. Y. 215, 223; *Matter of McEneny* v. *McKee*, 236 App. Div. 140.)   If an issue of fact is raised, an alternative order of mandamus should be granted.   (*Matter of Haebler* v. *New York Produce Exchange*, 149 N. Y. 414; *Matter of Poucher* v. *Berry*, 249 id. 16.)   If the opposing affidavits set up facts showing that as matter of law petitioner is not

entitled to relief, the application should be denied and the petition dismissed, as petitioner would be in the position of a plaintiff to whose complaint a demurrer formerly would have been sustained. (*People ex rel. Corrigan* v. *Mayor, supra; Matter of Steinway*, 159 N. Y. 250; *Matter of Hitchcock*, 149 App. Div. 824.)

The answering affidavits assert that the Title Guarantee and Trust Company has a right to do business in any county in the State for the reason that its special charter (Laws of 1882, chap. 392; Laws of 1883, chap. 367; Laws of 1884, chap. 167) does not limit the geographical field of its activities, and the Banking Law, in so far as it is inconsistent with this special charter, does not apply because of the saving clause contained in section 187: " Every trust company incorporated by a special law shall possess the powers of trust companies incorporated under this chapter and shall be subject to such provisions of this chapter as are not inconsistent with the special laws relating to such specially chartered company." Counsel for the defendants quote the construction of a similar section of the Banking Law of 1892 given in the opinion in *Jenkins* v. *Neff* (186 U. S. 230, 234): " But this gives no new powers to trust companies generally, but simply grants to such companies, incorporated under special laws, the powers of trust companies incorporated under the general statute, and subjects them to the same restrictions, *unless inconsistent with their special charters.*" That section is discussed in the opinion in the Appellate Division in *Venner* v. *Farmers' Loan & Trust Co.* (54 App. Div. 271, 274, 275; affd. without opinion, 176 N. Y. 549): " In other words, in making them subject to the provisions of the Banking Law, it imposed all the burdens and obligations which rested upon companies formed under the general act, while at the same time conferring upon them the same rights and privileges which such companies possessed *and saving such specially granted powers as were given by special charters and which were not inconsistent with the provisions of the Banking Law.*" The trust company's brief, deprecating the *Venner* opinion in comparison with the above-quoted part of the opinion in *Jenkins* v. *Neff* (*supra*), says: " The dictum to the contrary in the *Venner Case* (*supra*) was of course in no way approved by the Court of Appeals in affirming the judgment in that case without opinion." If the omission from the trust company's special charter of specific limitations of the geographical ambit of its activities is tantamount to the grant of a roving State-wide commission, and if section 187 be construed a saving clause, the trust company may establish at any place in the State branch offices whereat its banking business is carried on, as well as where the guaranteeing and searching of titles is

done, and the limitations contained in the Banking Law have no application to the unlimited charter granted the trust company in the early '80s. Special charters and franchises are to be construed strictly in favor of the public and against the grantees. (*Matter of Estate of Prime*, 136 N. Y. 347.) No powers or privileges are given except those specifically mentioned, or which must be inferred from an ordinary construction of the language used. (*Skaneateles W. W. Co.* v. *Village of Skaneateles*, 161 N. Y. 154; *Palmer* v. *Hickory Grove Cemetery*, 84 App. Div. 600.) The trust company's special charter does not disclose a legislative intent to create a financial institution with offices to be located throughout the State, the place and number to be governed only by the caprice of the officials. The amount of its capital, not less than $500,000 nor more than $2,000,000, does not justify such a claim. It was granted the right to establish a " depository " of moneys, not " depositories." The principal place of business was not fixed in the special charter, but the original act incorporated the " German-American Loan & Trust Company of the City of New York." (By chapter 167 of the Laws of 1884 the name was changed.) Since 1846 the State has reserved the right to alter or repeal special acts creating corporations (State Const. art. 8, § 1) and this reservation has become a part of each charter granted. (*Pratt Institute* v. *City of New York*, 183 N. Y. 151; *Lord* v. *Equitable Life Assurance Society*, 194 id. 212.)

The answering affidavits set forth a second ground for a denial on the law. The trust company, since 1908, has maintained a branch office at Mineola, Nassau county, where it has conducted a title insurance business, and another since 1925 at Riverhead, Suffolk county. These offices are outside the banking district wherein defendant's home office is located. No Superintendent of Banks has ordered their discontinuance. From this it is argued that there has been a practical construction of the statute to the effect that it is lawful for the trust company to maintain these offices and to establish and maintain like offices in such other places in the State as it may choose. It cites *Bullock* v. *Cooley* (225 N. Y. 566) and numerous other authorities as to the weight to be given the practical construction of a statute by enforcement officials. It is argued that it has this right because the Banking Law does not prohibit the establishment of branch offices whereat a title business is carried on, even though it does prohibit the establishment of branch banking offices outside of the banking district wherein the principal office is located. This argument is not founded upon the assertion that section 187 places the special charter provisions ahead of the Banking Law. The banking policy

of the State has been codified (§ 10-a): " Declaration of policy with reference to banking business. It is hereby declared to be the policy of the State of New York that the business of all corporations and persons subject to the Banking Law shall be supervised and regulated through the Banking Department in such manner as to insure the safe and sound conduct of such business, to conserve the assets of such corporations and persons, to prevent hoarding of money, to eliminate unsound and destructive competition among such corporations and persons and thus to maintain public confidence in such business and protect the public interest and the interests of depositors, creditors and stockholders." That the trust company is subject to the Banking Law is not questioned. Banking is a business affected by the public interest. The public, represented by the Superintendent of Banks, has an interest in all business done by a corporation engaged in banking. Unwise ventures or unreasonable expansion in other activities carried on by a banking corporation would imperil the safety of money and property belonging to the depositors. The balance sheets of the trust company show a mingling of all its assets. These are subject to liabilities that may be incurred, either in its banking, trust, investment, title insurance or other department or departments. The maintenance of two branch offices may be safe and sound and so determined by the Superintendent of Banks, while expansion to the extent of ten, forty or a hundred would be unsafe and unsound. Assuming that the maintenance of the two Long Island branches is now lawful under the theory that there has been a practical construction of the statute to that effect, it does not follow that the establishment of additional branches would be lawful.

The foregoing defenses do not sustain the denial of mandamus as matter of law. It remains to be determined if defendants' opposing affidavits allege facts which raise an issue as to petitioner's right to peremptory mandamus and, if so, whether an issue of fact is raised which should be decided under an alternative mandamus order. The petition alleges that the trust company maintains a branch and is transacting " its usual business " at a place where it is unlawful for it to do so. It is admitted in the answering affidavits that a branch is operated at White Plains outside the lawful banking district of the trust company, but it is asserted that the trust company limits its activities there to the searching and guaranteeing of real estate titles which is entirely separate from banking, its " usual business." All of the affairs of the trust company are managed by one board of directors or trustees and one set of officers. All expenses are paid from a common fund

and all profits or losses increase or decrease the common surplus. It is difficult to conceive under these circumstances how one branch is distinct from the other branches.

In construing a statute, ordinary words are given their common meaning. The standard dictionaries give "customary," "ordinary," "habitual" and "common" as synonyms of "usual." The trust company has been empowered, since 1883, to search and guarantee real estate titles and during substantially all of this time it has carried on that business. Under such conditions may it be said that the searching and guaranteeing of real estate titles is not its "customary," "ordinary," "habitual" or "common" business? The statute limits the field wherein a corporation subject to the Banking Law may transact its "usual" business. Should such a corporation take over the business of a creditor, say of manufacturing, hotel operating or farming, it might be compelled to operate that business for a time in order to realize upon an investment. This would be "unusual" not "usual" business and the statute would not apply.

There are issues of fact raised by this denial. Some of them I have mentioned. They are too involved to be decided summarily upon the petition and affidavits. An alternative order of mandamus should be granted whereunder the issues of fact may be tried.

Should it be determined at the trial that the defendant trust company is conducting a business in violation of the law, "may" as used in section 56 is mandatory, and it would be the duty of the Superintendent of Banks to issue an order in compliance with the section. (*People ex rel. Doscher* v. *Sisson*, 222 N. Y. 387; *People ex rel. Comstock* v. *City of Syracuse*, 59 Hun, 258; affd. on opinion below, 128 N. Y. 632, and the numerous citations in the *Comstock* case.)

The order appealed from, in so far as it denies the application for a peremptory mandamus order, should be affirmed, in so far as it dismisses the petition it should be reversed on the law and facts, with fifty dollars costs and disbursements, and the application for an alternative mandamus order should be granted.

CRAPSER and BLISS, JJ., concur; RHODES, J., dissents, and votes to affirm the order on the ground that mandamus against the Superintendent of Banks is not the proper remedy. (See discussion and cases cited in *Matter of Walsh* v. *LaGuardia*, 269 N. Y. 437.) HEFFERNAN, J., dissents, with a memorandum.

HEFFERNAN, J. (dissenting). I am unable to concur entirely in the opinion of the presiding justice. I believe that the order appealed from should be reversed and that a peremptory order

of mandamus should be granted commanding the Superintendent of Banks to act.

The only questions presented to us are questions of law. There are no disputed facts. The parties are in agreement on that proposition.

The position of the trust company, in substance, is that it does not transact its usual business at its offices in White Plains. The usual business of the trust company is that business which its charter authorizes it to transact. The business of this company is not divisible. The company is a single entity. Its charter authorizes it to " guarantee bonds and mortgages and titles to real estate." The usual business of this company must be deemed to be its regular and ordinary business. Its title and trust business constitutes its usual business. The title examination and insurance business is exercised as a power of a trust company, and not as a separate business by a different entity, and cannot be exercised otherwise. The business carried on by this respondent at its White Plains office is part and parcel of its usual business.

Order appealed from, in so far as it denies application for peremptory mandamus order, is affirmed; in so far as it dismisses the petition it is reversed on the law and facts, with fifty dollars costs and disbursements, and the application for alternative mandamus order is granted.