In the Matter of the Application of HUDSON-HARLEM VALLEY TITLE & MORTGAGE COMPANY, Petitioner, Respondent, for a Mandamus Order against WILLIAM R. WHITE, Superintendent of Banks of the State of New York, Appellant.

TITLE GUARANTEE AND TRUST COMPANY, Impleaded Respondent, Appellant.

Third Department, January 7, 1942.

*John J. Bennett, Jr.*, Attorney-General [*Henry Epstein*, Solicitor General; *James T. McDonald*, Special Assistant Attorney-General, *A. Donald MacKinnon* and *Einar B. Paust* of counsel], for the appellant Superintendent of Banks.

*Milbank, Tweed & Hope* [*Samuel E. Aronowitz* of counsel], for the impleaded respondent, appellant.

*James F. Donnelly* [*Walter J. McNichols* of counsel], for the respondent.

HILL, P. J. The Superintendent of Banks of the State of New York and the Title Guarantee and Trust Company appeal from a final order of peremptory mandamus (now Civ. Prac. Act, art. 78, § 1300) which directs the Superintendent to issue an order that the Title Guarantee and Trust Company cease and desist from maintaining a branch office at No. 2 William street in the city of White Plains, Westchester county, and for costs.

The original petition in which the Superintendent of Banks was the only respondent was dated and verified October 20, 1936. Later by order the other appellant was brought in as a party. The ground for the relief sought was stated to be that the appellant Title Guarantee and Trust Company, a banking corporation, was transacting a portion of its usual business outside the city where its principal place of business was located and in violation of the then existing provisions of the Banking Law (§ 195). Following a previous decision in this court (251 App. Div. 1) an alternative writ of mandamus issued. The final decision of the trial court was based on oral evidence, exhibits and an agreed statement of facts, stipulated by the attorneys. The case is back here at long last after many trips to court (251 App. Div. 911; 256 id. 393; 276 N. Y. 603) and a detour to the Legislature. (Laws of 1937, chap. 619; Laws of 1938, chap. 684.) Appellant Title Guarantee and Trust Company was incorporated under special statutes (Laws of 1882, chap. 392; Laws of 1883, chap. 367; Laws of 1884, chap. 167) which permitted it to function as a bank and trust company and also as a title insurance company. It is the only corporation in the State having such a combination of powers and privileges. Its main office is located in the county and city of New York, at 176 Broadway, borough of Manhattan. At the time of the commencement of the proceeding and when the case was first in this court,

the Banking Law provided, " No trust company or any officer or director thereof, shall transact its usual business at any place other than its principal place of business, except as follows: (a) A trust company in a city which has a population of more than fifty thousand may open and occupy in such city one or more branch offices, * * *." (Banking Law, § 195, in effect prior to amendments of 1937, *supra*.)

The Title Guarantee and Trust Company began its title business in Westchester county in 1897; its offices and " title plant " were located at White Plains. Until 1902 it solicited and received applications from the public for title insurance policies on properties located in Westchester county, and issued policies thereon under its own name. Thereafter while it continued to maintain its office at White Plains, it no longer received applications from the public for title insurance policies concerning Westchester county property, but guaranteed by indorsement the policies issued by other companies. It ceased the latter practice in 1936 and again made its facilities available to the public. The petitioner is engaged in the business of insuring titles to real property located in Westchester county, and is a competitor of appellant. It was determined in this court in this case in 1937 (251 App. Div. 1, 3, *supra*) that any person aggrieved may seek mandamus and that a person is aggrieved by the unlawful acts of a competitor.

The appellant Title Guarantee and Trust Company received an income of $2,035,670.32 from searching, examining and insuring titles in 1936, and from its banking department during that period $265,667.53. In 1939 the income from the title department was $1,766,440.19 and from the banking department $236,084.65. The only activity carried on by appellant at its White Plains office is connected with insuring titles to real property. The court found that the title guarantee business was blended with the banking and trust activities and " All of these activities and corporate powers are intermingled and are indivisible. In the exercise of all or any of these powers and in the performance of these various activities, every dollar of its capital, of its surplus and of its banking deposits is necessarily involved since it has only one capital and surplus account for the transaction of all of such activities against which losses and expenses are charged and to which profits are added," and that no proof was submitted that the maintenance and operation of the title business is unsafe and unsound " or impairs the capital or assets of said defendant."

Section 195 of the Banking Law, as earlier quoted, was repealed (Laws of 1937, chap. 619, § 3), and by that same chapter it was enacted: " § 105. Branch offices; prohibition against doing business

at unauthorized places.   1. No bank or trust company or officer, director, agent or employee thereof, shall transact any part of its usual business of banking at any place other than its principal office, except   *   *   *."   (The exceptions are not involved here.) The change from the wording "its usual business" in former section 195 to "any part of its usual business of banking" in new section 105 is significant when applied to appellant, the only corporation organized under the laws of this State authorized to combine the guaranteeing of titles of real property with the right to carry on a banking and trust business.   Also, the chronology of events in connection with this litigation and amendments to the bills introduced in the Legislature, which ultimately became chapter 619 of the Laws of 1937, leaves little doubt that while the Legislature intended that the amendment be general, the application is quite specific to appellant and this proceeding, and that thereunder, while appellant may not carry on its banking and trust business outside the city of New York, there is no inhibition against doing its title business outside the city.   The latter activity is under the supervision of the State Superintendent of Insurance; the former under the supervision of the other appellant, who would only be interested in the branch guaranteeing titles if it jeopardized the safety of the banking and trust branch of the business.

There is but one capital account of the appellant and one surplus fund.   Losses which occurred in one branch of its business would place the assets devoted to other activities in equal hazard.   However, the Legislature has enacted, " It is hereby declared to be the policy of the State of New York that the business of all banking organizations shall be supervised and regulated through the Banking Department in such manner as to insure the safe and sound conduct of such business   *   *   *   and thus to maintain public confidence in such business and protect the public interest and the interests of depositors, creditors, shareholders and stockholders." (Banking Law, § 10.)   This section was renumbered and amended. (Laws of 1938, chap. 684.)   It was the legislative intent that the interests of depositors, creditors and stockholders of a corporation exercising banking and trust powers should be supervised and regulated by the Banking Department, and that the courts would intervene only when an unrestrained violation of law existed. It has been written, " A banking corporation occupies a different relation to the public than do ordinary corporations, and its transactions frequently are subjected to a closer scrutiny and tested by a higher standard than that applied to ordinary commercial affairs " (*Rothschild* v. *Manufacturers Trust Co.*, 279 N. Y. 355.

359), and the same opinion quotes from an earlier case a statement that the banking business is "peculiarly an object of legislative solicitude in order that depositors and stockholders may be protected and proper management by those responsible therefor secured according to legislative theories of public welfare." There is no legislative restraint against appellant's exercising its title activities outside the city of New York. The Superintendent of Banks in the first instance is to supervise and guard the rights of depositors in its banking and trust branch, and the Superintendent of Insurance to have supervision over its title business. It does not appear that the public interests or the interests of depositors, creditors and stockholders are jeopardized by appellant's title business in Westchester county, nor that there is a violation of any statutory provision.

The order should be reversed and the petition dismissed.

CRAPSER, BLISS, SCHENCK and FOSTER, JJ., concur.

The findings of fact contained in the seventy numbered paragraphs have been examined, as well as findings of fact contained in the fifteen paragraphs captioned "Conclusions of Law." The conclusions of law numbered 13, 14 and 15 are disapproved.

The order appealed from is reversed on the law, with fifty dollars costs to be divided between the appellants, each to have individual disbursements, and the petition dismissed.

This court reverses none of the findings of fact found, although some seem to be irrelevant, and makes no new findings of fact.