### In re HITCHCOCK.

(Supreme Court, Appellate Division, Second Department. March 8, 1912.)

1. CORPORATIONS (§ 457*)—BONDED INDEBTEDNESS—RETIREMENT.
    Where a ferry company issued bonds for the purchase of boats, but, owing to the construction of a tunnel under the river, it was found that more boats were not required as a result of which a large surplus accumulated, it was proper for the corporation to reduce such surplus by purchasing the bonds in the open market.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1808, 1809; Dec. Dig. § 457.*]

2. MANDAMUS (§ 14*)—CONDITIONS PRECEDENT—DEMAND.
    Mandamus will not lie at the suit of a stockholder to compel the corporation to permit an inspection of its books where the information de-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sired, as alleged in the petition, for the writ did not correspond with the demand made on the company prior to the bringing of the action.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 44–46; Dec. Dig. § 14.*]

Appeal from Special Term, Kings County.

Mandamus by Francis R. Hitchcock against the Union Ferry Company of New York and Brooklyn. From an order of Special Term granting a peremptory writ to compel the company to submit its books, etc., to the inspection of the relator, the defendant appeals. Reversed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and WOODWARD, JJ.

George P. Hotaling, for appellant.
William G. Cooke, for respondent.

WOODWARD, J. The relator has been granted a peremptory writ of mandamus, directing the Union Ferry Company to permit him to examine the books of the corporation. The petition of the relator is met by the opposing affidavits of the officers of the corporation, familiar with its affairs, and the relator, standing upon the pleadings, is in the position of a demurrant, admitting all of the facts alleged by the respondent to be true, but insisting upon his right to relief notwithstanding such facts. People ex rel. Lehman v. Consolidated Fire Alarm Co., 142 App. Div. 753–754, 127 N. Y. Supp. 348, and authority there cited. It appears from the petition that the relator, with others, on the 20th day of December, 1910, demanded in writing a statement of its affairs under the provision of section 69 of the stock corporation law (Consol. Laws 1909, c. 59), and that this request was complied with. Subsequently relator's attorneys wrote a letter to the treasurer of the Union Ferry Company, in which they acknowledge the receipt of the statement, making no question as to its not being under oath, as required by the statute, but declaring that:

"It is not a statement of the affairs of the company nor a particular account of its assets and liabilities. What the stockholders want to know is the profit at which the ferries are now running; how much is being now earned; out of what the dividends are paid; what securities, if any, are now owned by the company, that is, the more particular account of the assets. We presume that the sum you state for real estate, boats, etc., over $4,000,000 is not the actual valuation."

This appears to be the full extent to which the relator or any one in his behalf has made any request to the corporation for information as to the condition of its affairs. There has been absolutely no suggestion that the relator desired to know anything about the retirement of the corporation bonds until the filing of the petition demanding a writ of mandamus. There was no rejection of the financial statement made by the treasurer of the corporation, no objection that it did not conform to the requirements of the law, in that there was a failure to verify the same. On the contrary, the report seems to have been retained by the relator and others by their attorneys, and the defect in this regard must be deemed to have been waived. The statute

provides that this statement, when made, shall be open to the inspection of any stockholder demanding an examination thereof, and that only one such statement can be required during any one year.

It was not until the petition in the present proceeding was executed that there was any suggestion in reference to the retirement of the corporation bonds. In this petition the relator declares that he—

"also desires to know the prices at which such bonds were retired; as it has been from time to time stated, in the financial journals of the city, that such bonds were redeemed at a price above the par value thereof at or about the time when they were being sold in the market at a price considerably below par. And your petitioner shows that no public notice or notice to the holders generally was given of the corporation's intention to retire such bonds, or of any resolution passed by the board of directors for that purpose, nor was the retirement by lot, so as to give all the bondholders an equal opportunity to secure the retirement of their bonds, but said bonds were retired by the payment to a certain few of the bondholders at a price greatly in excess of that at which the officers of the corporation as such might have purchased the bonds in the open market."

There is here no allegation that the bonds had been redeemed in the manner mentioned; merely that it "has been from time to time stated, in the financial journals of the city," without any information as to the particular financial journals, or of any reason to believe that these journals had any special information on the subject, or even that the relator believed that they had such information. This is met by the affidavit of the president of the corporation to the effect that the reduction in the bonded indebtedness of the corporation was made for the reason that during a period of years it had accumulated a large surplus for the purpose of building new boats, but finding the construction of new boats unnecessary, owing to the new bridges and the tunnel, it—

"was deemed best in the interests of the stockholders that this surplus should be used for reducing its bonded indebtedness, and thereupon, with the consent of the Central Trust Company, bonds aggregating $1,000,000 were purchased in the open market at prices known to the petitioner's counsel herein, and the trust company, under the terms of said mortgage, canceled the same, as appeared upon the statement of January 1, 1911, thereby saving to the stockholders nearly 2 per cent. per annum on the capital stock."

It may be that this statement is open to the objection that it does not state whether the bonds were purchased above par at a time when they were selling below par in the open market, but it is not more open to criticism than the hearsay allegations of the petition in reference to these bonds, and it elsewhere appears from an affidavit of Thomas Read, of the finance committee of the corporation, that "$1,-000,000 of Union Ferry bonds due 1920, and redeemable before that date at not less than 110, were purchased in 1909 and 1910; $700,000 at 101½ in 1909—no more could be obtained at that price; then $300,000 at 102½ in 1910, said bonds having been held by trust companies, insurance companies, banks, banking houses and individuals, numbering in all forty-two concerns, all of which knew that we were ready to pay the prices above stated. Some others did not care to sell at less than 110, the redeemable price, and still hold the bonds."

[1] Clearly the purchase of these bonds in the open market—for this allegation is not disputed, but is admitted under the rule above

cited—was not in derogation of any of the rights of the stockholders. Upon its face it appears to have been an entirely proper disposition to make of a surplus fund for which the corporation had no immediate use, and as the relator has never shown to the court that he desired this information for the protection of any of his rights as a stockholder, or that he has any intention of using the information for the protection of any such right, and it nowhere appears that he has ever heretofore asked for this particular information or that it has been denied to him, we are of the opinion, under the authorities, that he was not entitled to the relief which the order grants.

[2] The rule is that, before a relator is entitled to an order of this character, he must establish that the information desired has been refused by the corporation, after a demand made therefor, and that it was necessary for him to have the information in order to properly protect his interest in the corporation. Matter of Latimer v. Herzog Teleseme Co., 75 App. Div. 522, 78 N. Y. Supp. 314; Matter of Taylor, 117 App. Div. 348, 101 N. Y. Supp. 1039. No such facts appear in the case now under consideration. The answering affidavits show affirmatively that the affairs of the corporation are being conducted along sound business lines, and the only possible foundation for the order in this case is an allegation based upon the alleged publication of matter in unnamed financial journals, without any reason being given for believing that the statements were true, or even that they referred to the time when these purchases of bonds were being made.

The order appealed from should be reversed.

Order reversed, with $10 costs and disbursements, and motion denied, with $10 costs. THOMAS, J., concurs; JENKS, P. J., and CARR, J., concur on the ground that the petition does not disclose a proper demand for the information sought; BURR, J., not voting.