(157 App. Div. 328.)

## In re HITCHCOCK.

(Supreme Court, Appellate Division, Second Department. June 6, 1913.)

1. MANDAMUS (§ 129*)—STOCKHOLDERS—INSPECTION OF BOOKS—ENFORCEMENT OF RIGHT.

　　The small interest of a stockholder is not ground for refusing mandamus, on his being denied an inspection of the books of the corporation.

　　[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 264; Dec. Dig. § 129.*]

2. MANDAMUS (§ 129*)—CORPORATE STOCKHOLDERS—INSPECTION OF BOOKS—ENFORCEMENT OF RIGHT.

　　A stockholder, whose demand for inspection of the corporation's books, on the question whether, as reported in financial journals, its bonds were redeemed at a price above the market value, is denied, is entitled to mandamus, to enable him to acquire information relative to requiring, or instituting, suit against the directors.

　　[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 264; Dec. Dig. § 129.*]

3. MANDAMUS (§ 181*)—PEREMPTORY WRIT—TRIAL OF ISSUES.

　　Material allegations on which mandamus is sought being denied, the issue of fact thus raised must be tried, and determined in relator's favor, after issuance of an alternative writ, before a peremptory writ may issue.

　　[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 401–404, 408, 409, 418; Dec. Dig. § 181.*]

Appeal from Special Term, Kings County.

Application by Francis R. Hitchcock for mandamus to the officers of the Union Ferry Company of New York & Brooklyn. From an adverse order, relator appeals. Reversed, and alternative writ ordered.

See, also, 149 App. Div. 824, 134 N. Y. Supp. 174; 151 App. Div. 891, 135 N. Y. Supp. 1117.

Argued before JENKS, P. J., and BURR, THOMAS, RICH, and STAPLETON, JJ.

William G. Cooke, of New York City (Howard O. Wood, of New York City, on the brief), for appellant.

George P. Hotaling, of New York City, for respondent Union Ferry Co.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

PER CURIAM. · The relator is the owner of ·75 of ·the 30,000 shares of the capital stock of a transportation corporation. He sought in this proceeding a writ of mandamus to inspect the books of the corporation. An order was entered at Special Term denying the application for the writ as a matter of law, and not as a matter of discretion.

Another proceeding of the same character, between the same parties, was in this court on a former appeal. Hitchcock v. Union Ferry Co., 149 App. Div. 824, 134 N. Y. Supp. 174. The relator claims he has overcome the objection which defeated him in that application. The court, in its decision of that appeal, is simply committed to the determination that the petition there did not disclose a proper demand for the information sought. That difficulty has been obviated here.

The direct object of the application is to ascertain the facts in relation to a transaction whereby it is suggested that bonds of the par value of $1,000,000 were, before maturity, redeemed with funds of the treasury of the corporation at a greater cost than the market value of the bonds at the time of redemption. The relief specifically claimed is an inspection of the corporate books for that purpose. There are many statements in the motion papers irrelevant to the purpose of the proceeding. It is settled that:

"A stockholder has the right at common law to inspect the books of his corporation at a proper time and place, and for a proper purpose; and if this right is refused by the officers in charge a writ of mandamus may issue, in the sound discretion of the court, with suitable safeguards to protect the interests of all concerned." Matter of Steinway, 159 N. Y. 250, 263, 53 N. E. 1103, 1107 (45 L. R. A. 461).

The Supreme Court has exercised legal discretion in disposing of these applications. The rules of pleading and procedure applicable to the proceeding for a writ of mandamus have, of course, been followed.

[1] The small interest of the stockholder has been considered no barrier to relief. The gratification of idle curiosity and the facilitation of speculative schemes have been discouraged, and the manifestation of ulterior or sinister motives has been fatal to the application. People ex rel. Clason v. Nassau Ferry Co., 86 Hun, 128, 33 N. Y. Supp. 244; Matter of Pierson, 44 App. Div. 215, 60 N. Y. Supp. 671; People ex rel. McElwee v. Produce Ex. T. Co., 53 App. Div. 93, 65 N. Y. Supp. 926; Latimer v. Herzog Teleseme Co., 75 App. Div. 522, 78 N. Y. Supp. 314; Colwell v. Colwell Lead Co., 76 App. Div. 615, 78 N. Y. Supp. 607; People ex rel. Callanan v. K., etc., R. R. Co., 106 App. Div. 349, 94 N. Y. Supp. 555; Taylor v. Citizens' Nat. Bank, 117 App. Div. 348, 101 N. Y. Supp. 1039; People ex rel. Althause v. Giroux Consolidated M. Co., 122 App. Div. 617, 107 N. Y. Supp. 188; People ex rel. Hunter v. National Park Bank, 122 App. Div. 635, 107 N. Y. Supp. 369; People ex rel. Britton v. Am. Press Ass'n, No. 1, 148 App. Div. 651, 133 N. Y. Supp. 216.

[2] It is not denied that the relator is a stockholder in the defendant corporation, having acquired his stock by inheritance; that he made a demand for the information desired prior to the institution of this proceeding; that the demand was refused; that $1,000,000 of Union Ferry bonds, due in 1920 and redeemable before that date at

not less than 110, were purchased in 1909 and 1910—$700,000 at 101½ in 1909, and $300,000 at 102½ in 1910. The only fact remaining for him to establish, prerequisite to relief, is that his purpose is proper. He alleges that:

"About three years ago the bonded indebtedness of said corporation was $2,200,000, and it appears in the present statement to have been reduced in the course of two years by $1,000,000, and your petitioner desires to know what moneys of the corporation were used for that purpose, whether the funds were obtained from earnings, or from the sale of real estate or securities belonging to the corporation. Your petitioner also desires to know the prices at which such bonds were retired, as it has been from time to time stated, in the financial journals of the city, that such bonds were redeemed at a price above the par value thereof at or about the time when they were being sold in the market at a price considerably below par. And your petitioner shows that no public notice, or notice to the bondholders generally, was given of the corporation's intention to retire such bonds, or of any resolution passed by the board of directors for that purpose, nor was the retirement by lot, so as to give all the bondholders an equal opportunity to secure the retirement of their bonds, but said bonds were retired by the payment to a certain few of the bondholders at a price greatly in excess of that at which the officers of the corporation as such might have purchased the bonds in the open market. * * * And your petitioner shows: That the Financial and Commercial Chronicle is a regular publication issued each week in the borough of Manhattan, city of New York, and gives for the public information and as accurately as possible the prices bid and asked for stocks and bonds dealt in in the market of securities in Wall Street, and is the generally recognized authority for the facts with respect thereto. That the quotations for the bonds of the Union Ferry Company of New York & Brooklyn, as given in the Financial and Commercial Chronicle for each month during the years 1909 and 1910 are as follows:

| | 1909. | | | 1910. | |
| | Bid. | Asked. | | Bid. | Asked. |
|---|---|---|---|---|---|
| January | 90 | 95 | January | 98 | 101 |
| February | 90 | 92½ | February | 95 | 99 |
| March | 95 | 102 | March | 95 | 99 |
| April | — | — | April | 97 | 99 |
| May | — | 98¼ | May | 94 | 98 |
| June | 92 | 96 | June | 94 | 98 |
| July | 98 | 102 | July | 95 | 97 |
| August | 95 | 98 | August | 93 | 97 |
| September | 94 | 98 | September | 93 | 96 |
| October | 95 | 97 | October | 93 | 97 |
| November | 95½ | 97 | November | 95 | 99 |
| December | 95 | 97 | December | 95 | 99 |

"Making an average bid price for the year 1909 of 94 and for the year 1910 of 95, and an average asking price for the year 1909 of 97½ and for the year 1910 of 98½."

The officers of the defendant, in its answering affidavits, deny the material parts of these allegations, to wit, that the bonds were purchased at more than the market price at the time of the transaction, and they allege that they acted in good faith and for the best interests of the defendant.

As it is clear that a stockholder is entitled to information which may be gathered from the books of the corporation for the purpose of requiring the corporation to move against the directors for actionable wrongs, or, in the event of its failing so to move, of instituting a derivative action against them, if the allegations of the petitioner that the

bonds were redeemed by the company at more than the market value at the time of redemption are true, he presents ground for judicial intervention.

[3] The facts upon which a relator relies must be undisputed before a peremptory writ of mandamus may issue. The denial of material allegations raises an issue of fact, which must be determined upon a trial, after the issuance of an alternative writ.

The order should be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs, and the issuance of an alternative writ of mandamus ordered.

BURR, J., not voting.